**FILED**
**May 28, 2024**
**03:13 PM(CT)**
**TENNESSEE COURT OF WORKERS' COMPENSATION CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | |
|---|---|
| KAYLA POND,<br>　　　　Employee,<br>v.<br><br>DARDEN RESTAURANTS, INC.,<br>　　　　Employer,<br><br>And<br><br>INDEMNITY INS. CO. OF N.A.,<br>　　　　Insurance Carrier. | Docket No. 2023-07-6858<br><br><br>State File No. 94215-2021<br><br><br>Judge Robert Durham |

---

## COMPENSATION ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on May 16, 2024, to determine the appropriate impairment rating for Ms. Pond's left-shoulder injury.[1]  The Court holds that Darden overcame the statutory presumption afforded the treating physician and the appropriate rating is 2% based on the evaluating physician's impairment.

## History of Claim

On October 25, 2021, Ms. Pond suffered an injury to her left shoulder while trying to hold up a tilting prep table.  She testified that she never had problems with her shoulder before this injury.  Ms. Pond selected orthopedist David Pearce as her treating physician.

Dr. Pearce diagnosed Ms. Pond with a severe labral tear and a full-thickness rotator cuff tear as well as some "significant arthritic changes" and bone spurring in the acromioclavicular joint.  In his deposition, Dr. Pearce said he believed the tears were more than 50% related to the injury but acknowledged that the arthritic changes were more likely

---

[1] The parties agreed that Ms. Pond's compensation rate is $917.08 and that she returned to work at her preinjury wage at the end of her compensation period.

1

than not preexisting. Dr. Pearce surgically repaired the tears. During the surgery, he also cleared out "debris" that he described as part of the distal clavicle and resected part of the clavicle, so it "doesn't impinge and cause pain."[2]

When he first determined Ms. Pond's impairment, Dr. Pearce said her treatment was a labral repair, a rotator cuff repair, and a distal clavicle resection. He noted that her "main disability" was mild loss of range of motion from her distal clavicle, and he assessed a 7% impairment, which he later reduced to 6%.

In his deposition, he admitted that he did not always agree with the AMA Guides, and he believed the totality of Ms. Pond's injury deserved a greater impairment than the Guides would allow.[3] He said he knew the rating was not accurate, but he had to "inflate her rating" to get to what he felt she deserved.

Dr. Pearce further said that Ms. Pond's "causally related diagnosis" was a rotator cuff tear and a labral tear. He agreed that under the AMA Guides, if two significant diagnoses exist, the doctor should only use the higher of the causally-related impairments in determining the impairment rating. He also admitted that the AMA Guides say that if a doctor is rating rotator cuff tears or glenohumeral pathology, an "incidental" distal clavicle resection should not be considered.[4]

He agreed that if he is doing surgery under workers' compensation and sees a problem that is not work-related, he will go ahead and fix it. In Ms. Pond's case, he believed that the need for the resection was multifactorial.

On examination by Ms. Pond's counsel, Dr. Pearce said that the "debris" he found in the AC joint "can be" due to trauma. He said that the extent of Ms. Pond's arthritis was "really" unusual given her age, and that if she were asymptomatic before the injury, it would suggest an aggravation or exacerbation of her underlying arthritis. He believed the meniscal fragments in her AC joint were more than basic degenerative arthritis, and that trauma "could be" a cause for the fragments. However, he could not say that to a reasonable degree of medical certainty that the arthritic condition was more likely than not due to her work injury.

However, upon further questioning by Ms. Pond's attorney, he qualified this

---

[2] Dr. David Lochemes, the records review physician, described a distal clavicle resection as the removal of the end of the clavicle so that it no longer rubs against the acromion, thus alleviating any pain caused by two bones rubbing together.

[3] At his deposition, Dr. Pearce was first examined by Darden's counsel and then "cross-examined" by Ms. Pond's attorney.

[4] Dr. Pearce objected to the word "incidental": however, his objection was that the word implied that the procedure was unnecessary to treat Ms. Pond's shoulder condition, not that the resection was due to the work injury.

opinion. He said that if Ms. Pond had an asymptomatic shoulder without a history of earlier trauma, then the meniscal "debris" was more likely than not due to the work-related injury, given that it would be unusual to see that without trauma in someone Ms. Pond's age.

Dr. Pearce went on to say that since he changed Ms. Pond's anatomy through surgery, he believed the 6% rating was appropriate. He recognized that he "went a little out of bounds" but believed that all of Ms. Pond's problems—"the rotator cuff, superior labrum, biceps moving, AC joint" —merited a larger impairment than 2%.

On redirect, Dr. Pearce again qualified his causation opinion by saying that Ms. Pond's AC arthritis was not more than 50% related to the work accident. He felt comfortable saying Ms. Pond's injury was an "AC joint sprain with tear to the discoid meniscus, a rotator cuff tear, and a superior labrum tear with an extension into the biceps." He further said that if he took a "hard line stance" on impairment under the AMA Guides, he should probably not include an AC joint impairment. He admitted that he used the AC joint impairment because he felt it did the "best justice" to all her shoulder pathology, and at the end of the deposition he stood by his 6% rating.

In response to Dr. Pearce's rating, Darden sent Ms. Pond's records to Dr. David Lochemes for an impairment opinion. Dr. Lochemes is a board-certified orthopedist who is also certified through the Bureau's Physician Certification Program and has been a member of the Bureau's Medical Impairment Rating Registry since 2005.

Dr. Lochemes testified that, based on Ms. Pond's history, he believed that she suffered a work-related tendon tear as well as a full-thickness rotator cuff tear, and that Dr. Pearce's treatment for these injuries was reasonable and necessary.

As for the AC joint, Dr. Lochemes said that he was not sure what Dr. Pearce saw when he described "debris," but he could have been referring to loose cartilage in the AC joint. If so, he would attribute that to a chronic condition rather than an acute injury. He felt that in Ms. Pond's case, the "debris" removal and the distal clavicle resection were likely done to be "complete with the surgery and address all the pathology," but "the ticket to the operating room" was the labral and rotator cuff tears.

Dr. Lochemes noted that Dr. Pearce's impairment was based on the resection. And while that might be an appropriate rating for Ms. Pond's shoulder condition, it does not accurately reflect her impairment for injuries primarily caused by her work-related injury. Dr. Lochemes testified that the problems causally related to the work injury were the tendon tear and the rotator cuff tear, and those were the conditions that should be rated.

Dr. Lochemes referred to page 387 of the AMA Guides, which states that when more than one diagnosis for the shoulder exists, the doctor should use the diagnosis "with the highest causally related impairment in calculation." The Guides go on to say that the

"incidental resection of the arthroplasty is not rated." He testified that Dr. Pearce's impairment rating, by his own admission, did not follow this directive. He said Dr. Pierce's calculation was unacceptable and did not adhere to the Guides, given that the "AC joint is an incidental thing done at the time of surgery, and that is specifically not to be ranked."

According to Dr. Lochemes, using either the rotator cuff tear or the SLAP tear resulted in a 2% impairment.

## Findings of Fact and Conclusions of Law

Ms. Pond has the burden of proving the essential elements of her workers' compensation claim by a preponderance of the evidence. Tenn. Code. Ann. 50-6-239(c)(6) (2023). In this case, the parties agreed on all issues but one—Ms. Pond's anatomic impairment from her work-related injury.

In deciding the correct impairment, the Court looks to *Hart v. Thyssenkrupp Elevator Corporation*, 2020 TN Wrk. Comp. App. Bd. LEXIS 67, at *18, 19 (Nov. 25, 2020). In *Hart*, similar to this case, the employee suffered a work-related labral tear and biceps tendinitis. While surgically repairing the work-related injury, the treating doctor also performed a distal clavicle resection, which he admitted was not causally related but was "incidental" to the labral and tendon repair. Still, the doctor used the resection as the basis for his impairment "because it was more appropriate for [the employee's] disfunction." *Id*. at *4.

The Appeals Board first determined that the medical proof did not establish that the work injury caused or aggravated the AC arthrosis alleviated by the resection. Nor did the evidence show that the arthrosis was the "direct and natural consequence" of the primary injury. The Board held that the resection was "merely collateral" to the work injury and was not causally related. The fact that it was done at the same time as the labral repair did not make it compensable. *Id*. at *13-14. The Board modified the award based on the impairment for the labral tear only. *Id*. at *19.

Ms. Pond's shoulder injury and Dr. Pearce's treatment of it are almost identical to *Hart*. Dr. Pearce and Dr. Lochemes both testified that Ms. Pond suffered a work-related left-shoulder tendon and rotator cuff tear for which the AMA Guides provided a 2% impairment. Dr. Pearce also performed a resection to alleviate arthrosis, and both doctors agreed that if they included the resection, Ms. Pond's impairment would be 6%. However, they disagreed as to whether including the resection was appropriate.

As in *Hart*, the first question in determining the correct impairment is whether Ms. Pond's AC arthritis and the resulting resection are causally related to the work injury. To prove causation, Ms. Pond must show to a reasonable degree of medical certainty that the injury and need for treatment "arose primarily out of and in the course and scope of

4

employment." Tenn. Code Ann. § 50-6-102(12)(A).  She must establish causation through expert medical opinion.  *Id*. at -102(12)(D).  Since Dr. Pearce was Ms. Pond's authorized treating physician, his causation opinion is presumed correct but may be rebutted by a preponderance of the evidence.  *Id.* at -102(12)(E).

Ms. Pond emphasized that Dr. Pearce testified that her AC arthritis was more likely than not due to her injury, given that she was asymptomatic before, and the extent of the damage was unusual in someone her age.  However, before making this statement, Dr. Pearce repeatedly testified that trauma *could* be the cause, or perhaps it aggravated the arthritis, but he could not say to a reasonable degree of medical certainty.  Additionally, on follow-up examination, he again testified that he could not say that the arthritis was more than 50% related to the work injury.

The best that can be said for Dr. Pearce's causation opinion is that it was equivocal.  In contrast, Dr. Lochemes testified without qualification that Ms. Pond's only work-related injuries were her labral and tendon tears, and the resection was an incidental procedure.  Given this evidence, the Court gives more weight to Dr. Lochemes's testimony and holds that Darden overcame any presumption of correctness afforded to Dr. Pearce's causation opinion as to the arthritis and the need for a resection.

The Court next turns to whether Dr. Pearce could use the resection as the basis for impairment simply because he performed the procedure while repairing the work injury.  *Hart* makes it clear that he cannot.  *Id*. at *13, 14.  Dr. Pearce acknowledged that the AMA Guides do not allow it.  He admitted that he "inflated" the impairment and "went a little out-of-bounds" by using the resection to determine impairment.  He felt the repairs done on Ms. Pond's shoulder merited a larger impairment, even though a "hard-line" stance in using the Guides did not allow it.  Further, Dr. Lochemes, a member of the MIR Registry since its inception, testified that the AMA Guides explicitly prohibit a shoulder impairment based on an "incidental" resection.

Section 50-6-204(k)(1)(C) states that an impairment generally cannot be accepted unless it is based on the AMA Guides.  The Court finds that Dr. Pearce's impairment did not meet this requirement.  Thus, the Court finds that Dr. Lochemes's 2% impairment is the accurate rating.  Given her compensation rate of $917.08 and that she returned to work at her preinjury wage, Ms. Pond is entitled to $8,254.72 in permanent partial disability benefits.

IT IS, THEREFORE, ORDERED:

1. Darden shall pay Ms. Pond an award of permanent partial disability benefits based on a 2% permanent medical impairment at the compensation rate of $917.08, or $8,254.72.

2. Ms. Pond's counsel shall receive an attorney's fee of 20% of the award, or $1,650.74.

3. Darden shall pay for reasonable, necessary, and related medical treatment for Ms. Pond's work-related injury of October 25, 2021, with Dr. David Pearce remaining her authorized physician.

4. Either party may file a motion for court costs and discretionary expenses.

5. Darden shall pay court costs of $150.00 to the Court Clerk within five business days of this order becoming final.

6. Darden shall prepare and file with the Court Clerk a Statistical Data Form within 10 business days of the date this order becomes final.

7. This Compensation Order is an adjudication on the merits. Unless appealed, this order becomes final in 30 days.

**ENTERED May 29, 2024.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**


## APPENDIX


Exhibits:
1. Dr. Pearce's deposition with attached exhibits
2. Dr. Lochemes's deposition with attached exhibits
3. Collective medical records
4. Ms. Pond's responses to Interrogatories and Requests to Produce Documents
5. Dr. Pearce's C-30A forms

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on May 29, 2024.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Spence Barnes, Employee's Attorney | | | X | spence@morrisonbarnes.com |
| Benjamin T. Norris, Employer's Attorney | | | X | bnorris@eraclides.com |

_____
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*